DALE A. and CHERYL A. McELHANY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McElhany v. Commissioner
Docket No. 6676-79.
United States Tax Court
T.C. Memo 1981-547; 1981 Tax Ct. Memo LEXIS 187; 42 T.C.M. (CCH) 1206; T.C.M. (RIA) 81547; September 28, 1981. Dale A. McElhany, pro se. Peter D. Bakutes, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1976 in the amount of $ 1,680.44. The issue for decision is whether petitioners are entitled to deduct any portion of an amount expended by Dale A. McElhany (petitioner) for training as a flight engineer and, if so, whether the amount must be reduced to the extent that the expenditure was reimbursed by the Veterans' Administration (VA) under 38 U.S.C. section 1677. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in Incline Village, Nevada, at the time of the filing of the petition in this case, *188 filed a joint Federal income tax return for the calendar year 1976 with the Internal Revenue Service Center, Fresno, California. Prior to 1976 and from the first of 1976 through October 29, 1976, petitioner was serving on active duty with the United States Navy as an airplane pilot/flight commander. Following his resignation from the Navy on October 29, 1976, petitioner joined a Navy Reserve squadron stationed at Moffett Field, California, as his sole means of employment. His primary assignment with the reserve squadron was that of naval aviator. On November 15, 1976, petitioner enrolled in a flight training program offered by Sierra Academy of Aeronautics (Sierra Academy) at Oakland International Airport, Oakland, California. The program in which petitioner enrolled was for training as a flight engineer and included the following instruction: 136 hours of ground school, 80 hours of procedures, 15 hours of cockpit trainer, 12 hours of simulator, and 57 to 100 hours of flight. The amount charged by Sierra Academy for the program, including certain minor related expenses, was $ 4,396.50. In 1977, after completion of the program, petitioner obtained employment with Continental *189 Airlines as a second officer (flight engineer) on a Boeing 727. As a second officer (flight engineer) petitioner's duties included the operation of all aircraft systems, record keeping, and the computation of aircraft performance data, but did not include flying or piloting of the aircraft. The Federal Aviation Administration requires all scheduled commercial airlines, including Continental Airlines, to provide its employees with all training necessary to perform their duties in connection with the operation of the aircraft. While on active duty in the Navy and in the Reserve unit which he joined after resigning from active duty, petitioner flew a plane designated as a P-3. The crew of a P-3 consists of two commissioned officers and one noncommissioned officer. The two commissioned officers are the pilots of the aircraft designated as the aircraft commander and the flight commander. The noncommissioned officer on the crew of a P-3 is a flight engineer. In the Navy, pilots rotate between the job of flight commander (first pilot in plane) and aircraft or patrol commander (pilot in command of plane). Navy officers are not trained to be flight engineers and never act as flight *190 engineers. Only enlisted personnel receive flight engineer training and only enlisted personnel perform flight engineer duties. The P-3's that petitioner flew, both while on active duty in the Navy and while in the Navy Reserve, were not allowed to take off without a flight engineer. However, petitioner, after completing the Sierra Academy flight engineer training program, would not have been allowed to function as a flight engineer on a Navy Reserve flight. A Navy pilot who is a commissioned officer is not permitted by the Navy to serve as a flight engineer. Commercial airline companies are required to have three crew members on a 727. These members are the captain, who is the pilot in command of the aircraft; the first officer or copilot; and the second officer or flight engineer, who sits at a panel in the rear of the cockpit and monitors certain instruments. The flight engineer is also responsible for the inspection of the plane before takeoff and other duties in monitoring the performance of the plane. On his application for admission for flight engineer training filed with Sierra Academy in October 1976, petitioner stated that the final educational, professional or vocational *191 goal which he sought to accomplish through the program at Sierra Academy was that of "professional pilot." Petitioner had for many years wanted to work as an airline pilot. In 1976 the only available airline positions were those of flight engineer. Some flight engineer training is required for a person to become a flight engineer, and the Sierra Academy program was a help to petitioner in obtaining a flight engineer position. In applying to the airlines for a flight engineer position, he listed the training at Sierra Academy on his resume. Petitioner, in order to obtain reimbursement from the VA for his expenses at Sierra Academy, filed a certificate of eligibility with the VA. On this certificate petitioner listed his final objective as becoming a "flight engineer." The flight engineer training petitioner received at Sierra Academy was in turbojet planes which were different types of planes from the turboprop planes petitioner flew in the Navy. The Navy did not require its pilots to have flight engineer training. When petitioner enrolled for the flight engineer training, he knew that 90 percent of the cost of the program would be reimbursed to him by the VA. Petitioner, *192 on his Federal income tax return for the year 1976, deducted $ 5,445 as educational expenses. The amount deducted was stated to be tuition, books and supplies of $ 5,040 and transportation or mileage at 12 cents per mile of $ 405. Respondent, in his notice of deficiency, disallowed in full the claimed deduction for educational expenses. OPINION Section 162 [1] provides for a deduction for ordinary and necessary business expenses. Section 1.162-5, Income Tax Regs., provides that expenditures made by an individual for education which maintains or improves skills required by the individual in his employment or other trade or business, or meets the express requirements of the individual's employer as a condition to the retention of the individual's employment, are deductible business expenses. [2] This regulation further provides that expenditures made by an individual for education which is required in order to meet the minimal educational requirements for the qualification in his employment or other trade or business or which is part of a program of study qualifying him for a new trade or business are nondeductible. *193 There have been numerous cases discussing the question of whether the education for which an expenditure is made is so proximately and directly related to the individual's employment as to constitute a business expense. If such a proximate and direct relationship does not exist, the educational expenditure is a nondeductible personal expense. In Carroll v. Commissioner, 51 T.C. 213 (1968), affd. 418 F.2d 91 (7th Cir. 1969), we pointed out that the fact that a taxpayer's education may be helpful to him in the performance of his employment is not sufficient to make the amount deductible. The relationship must be more direct than just the general usefulness of the education to the individual. In the Carroll case, supra, we stated (at 218) that "A further bar to the petitioner's deduction of his educational expenses lies in the requirement that before expenses will be considered ordinary and necessary under section 162, it must be established that they bear a proximate and direct relationship to the taxpayer's trade or business. * * * The regulations allow a deduction for education that maintains or improves skills " required in the business *194 in which the taxpayer is engaged. Petitioner, in the instant case, was a pilot of a turbojet plane, a P-3, and he was not required to have the skills of a flight engineer in connection with that position. There is no showing in this record that the flight engineer training was helpful to petitioner in his work as a Navy pilot. Petitioner needed the skills of a flight engineer in order to obtain a position with a commercial airline. We therefore conclude that there did not exist a proximate relationship between petitioner's trade or business of being a naval aviator and the training he took to become a flight engineer. Furthermore, we conclude on the basis of this record that a flight engineer is a different trade or business from an aviator and, therefore, the training which petitioner took at Sierra Academy was undertaken to prepare him for a new trade or business. Clearly, under Navy standards a flight engineer and a pilot are different trades or businesses. [3] The distinction made by the Navy is so pronounced that even had petitioner been a qualified flight engineer he would not have been permitted to serve in such a capacity on a Navy plane because he was a Navy pilot. *195 In fact, petitioner in his own testimony referred to this distinction when he stated that a flight engineer is an "airman" and a pilot is an "aviator." Under the provisions of the regulations, a Navy pilot and a commercial or air transport pilot might be considered as the same trade or business. However, this is not the issue before us. Here, petitioner was a pilot who was enrolled in a program of study to enable him to become a flight engineer. As we pointed out in Grover v. Commissioner, 68 T.C. 598, 601 (1977), this Court has adopted a common sense approach in deciding whether an educational expenditure qualifies a taxpayer for a new trade or business. Petitioner, in the instant case, was a qualified pilot. Had the training he was undertaking been for piloting a turbojet plane as compared to the turboprop plane he had been flying in the Navy, the training would have been related to the trade or business in which petitioner was *196 engaged in his work in the Navy. However, the training petitioner undertook qualified him as a flight engineer which required substantially different skills from the skills required of a pilot. The flight engineer is responsible for inspecting and monitoring the equipment which operates the plane, whereas the pilot flies the plane. Petitioner's training in the Navy may well have qualified him for a position of a pilot with a commercial airplane. However, in 1976 the commercial airlines were not hiring pilots. For that reason petitioner took training to become a flight engineer in order to obtain a position with a commercial airline. Adopting the common sense approach referred to in Grover v. Commissioner, supra at 601, and the cases there cited, we conclude that the education petitioner took at Sierra Academy was to qualify him for a different trade or business. Since there was no proximate relationship between the training petitioner took at Sierra Academy and his work as a Navy pilot, and since that training qualified petitioner for a new trade or business, we conclude that petitioner is not entitled to deduct any part of the amount he expended for his flight *197 engineering course at Sierra Academy. Because of our conclusion that petitioner has failed to show that any portion of his educational expense is deductible, we do not reach the issue of whether the fact that petitioner was reimbursed for 90 percent of the cost of his training at Sierra Academy by the VA would cause that portion of his expense to be nondeductible. Decision will be entered for the respondent. Footnotes
1. Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue. ↩
2. Sec. 1.162-5, Income Tax Regs., provides in part as follows: Sec. 1.162-5. Expenses for education. (a) General rule. Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education-- (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation. (b) Nondeductible educational expenditures--(1) In general. Educational expenditures described in subparagraphs (2) and (3) of this paragraph are personal expenditures, or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses even though the education may maintain or improve skills required by the individual in his employment or other trade or business or may meet the express requirements of the individual's employer or of applicable law or regulations. (2) Minimum educational requirements. (i) The first category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is required of him in order to meet the minimum educational requirements for qualification in his employment or other trade or business. The minimum education necessary to qualify for a position or other trade or business must be determined from a consideration of such factors as the requirements of the employer, the applicable law and regulations, and the standards of the profession, trade, or business involved. The fact that an individual is already performing service in an employment status does not establish that he has met the minimum educational requirements for qualification in that employment. Once an individual has met the minimum educational requirements for qualification in his employment or other trade or business (as in effect when he enters the employment or trade or business), he shall be treated as continuing to meet those requirements even though they are changed. (3) Qualification for new trade or business↩. (i) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. In the case of an employee, a change of duties does not constitute a new trade or business if the new duties involve the same general type of work as is involved in the individual's present employment. For this purpose, all teaching and related duties shall be considered to involve the same general type of work. * * *
3. See Lund v. Commissioner, 46 T.C. 321↩ (1966), in which we held that a flight engineer on a propeller aircraft and a second officer (flight engineer) on a jet aircraft are essentially the same trade or business.